IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALPHAPOINTE,
7501 Prospect
Kansas City, MO 64132,

        Plaintiff,

  v.

THE DEPARTMENT OF VETERANS
AFFAIRS, an agency of the United States of
America,
810 Vermont Avenue NW
Washington DC 20571,

DAVID SHULKIN, in his official capacity as
SECRETARY OF THE DEPARTMENT OF
VETERANS AFFAIRS,
 810 Vermont Avenue NW
Washington, DC 20571, and

UNITED STATES OF AMERICA,

SERVE:
Channing D. Phillips, United States Attorney
United States Attorney's Office
555 4th Street
Washington, DC 20530

COPY:
The Honorable Jefferson B. Sessions,
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530,

        Defendants.

Civil Action No. _____

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

    Plaintiff Alphapointe, by and through undersigned counsel, files this Complaint for

declaratory judgment, preliminary injunctive relief, and permanent injunctive relief pursuant to

the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and alleges as follows:

## INTRODUCTION

1.      At issue in this lawsuit is a new rule issued by the Department of Veterans Affairs ("VA"), without notice and comment, which upends decades of well-settled law and policy underpinning the AbilityOne Program.  The mission of the AbilityOne Program is simple and straightforward:  to provide employment opportunities for people who are blind or have other severe disabilities, many of whom are veterans, in the manufacture and delivery of products and services to the federal government.  The VA's unlawful action has imperiled this important mission and should be reversed.

2.      Congress first enabled nonprofit agencies that serve the blind to sell products to the federal government in 1938.  This mandate was expanded in 1971 to include people with other significant disabilities through passage of the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 8501-8506 ("JWOD Act"), which serves as the basis for the federal AbilityOne Program.  The AbilityOne Program is among the nation's largest providers of jobs for people who are blind or have significant disabilities. It uses the purchasing power of the federal government to buy products and services from participating, community-based nonprofit agencies that train and employ workers who are blind and/or severely disabled, like Plaintiff Alphapointe.

3.      To maximize the impact of the AbilityOne Program, the JWOD Act made it a "mandatory source" for federal government procurement.  What this means is that all federal government agencies, including the VA, are required to purchase products and services from AbilityOne nonprofit agencies on a priority basis -- i.e., before considering other alternatives such as free and open competition.  41 U.S.C. § 8504(a).

4.      Congress through the years has established procurement preferences, including one that benefits certain veteran-owned small businesses.   Enacted in December 2006, the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("Veterans Benefits Act" or "VBA") established the Veterans First Contracting Program ("VFCP"). 38 U.S.C. §§ 8127-8128.   Under the VFCP, the VA must give a procurement preference to qualified veteran-owned small businesses if there is a "reasonable expectation" that at least two such businesses will bid on the contract and that "the award can be made at a fair and reasonable price that offers best value to the United States."   *Id.* § 8127(d).   This two-competitor benchmark is commonly known as the "Rule of Two."   The VFCP was not intended to, however, and for many years did not impact the accepted priority status of the AbilityOne Program.   Indeed, the VA in 2010 issued a final rule implementing the VFCP in which it expressly recognized as much: "AbilityOne's priority status has not been changed as a result of this rule."   74 Fed. Reg. 64,619, 64, 622 (Dec. 8, 2009).

5.      This status quo was maintained even after the Supreme Court's decision in *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1972 (2016) (hereinafter "*Kingdomware*"), holding that the VA was required to conduct a Rule of Two analysis when awarding a contract or placing an order under a Federal Supply Schedule contract.   After *Kingdomware*, the VA issued a Policy Memorandum and a Class Deviation from the Veterans Affairs Acquisition Regulation Supplement ("VAAR") that properly continued to accord mandatory priority to the AbilityOne Program, consistent with the VA's 2010 final rule and longstanding policy.

6.      This changed with the VA's issuance on March 1, 2017, of an "amended" Class Deviation that for the first time purports to give priority to veteran-owned small businesses over

qualified nonprofit agencies that employ persons who are blind and severely disabled. This new rule represents a significant, substantively unlawful reversal of course for the VA. In addition to departing from the VA's 2010 final rule and longstanding policy without reasoned explanation, the new rule ignores the mandatory language of the JWOD Act as well as the priorities for use of mandatory sources set forth in the Federal Acquisition Regulation ("FAR"). The issuance of this new rule also was procedurally defective in that the VA failed to provide any notice to the public, let alone any opportunity for comment.

7.    The challenged VA final action is both unsupported and unsupportable; it is also likely to result in irreparable harm to Plaintiff Alphapointe. Accordingly, Alphapointe seeks a declaration from this Court that the 2017 VA Class Deviation is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Alphapointe also seeks preliminary and permanent injunctive relief from this Court, enjoining the VA from enforcing the 2017 Class Deviation.

## THE PARTIES

8.    Plaintiff Alphapointe is a nonprofit corporation organized and existing under the laws of the state of Missouri, with its principal place of business in Kansas City, Missouri. Alphapointe's mission is to empower people who are blind and visually impaired to achieve their goals and aspirations, including by providing them with employment opportunities, vocational training, rehabilitation services, education, and outreach. One of the ways in which Alphapointe carries out its mission is through serving as a qualified nonprofit agency ("NPA") within the AbilityOne Program, a federal program administered by the U.S. AbilityOne Commission. Alphapointe is suffering direct, substantial injury because the VA's action will reduce, if not eliminate, the VA's orders for Alphapointe's products, and the resulting loss of revenue will

impact Alphapointe's ability to continue to deliver upon its important mission, including for example, forcing Alphapointe to eliminate jobs and scale back its programs.   Under the AbilityOne Program, Alphapointe is a mandatory source of supply for the VA's purchase of pharmaceutical prescription bottles for use in the VA's mail order supply pharmacies, as well as for the VA's purchase of certain janitorial equipment and supplies, including mops and spray bottles for janitorial cleaning liquids.   Prior to the VA's action, Alphapointe was entitled to receive all VA orders for those products once the products were placed on the U.S. AbilityOne Procurement List for the VA.

9.      Defendant VA is "an executive department" of the United States Government, 38 U.S.C. § 301, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  The VA is currently headquartered at 810 Vermont Avenue NW, Washington, DC 20571.

10.      Defendant David Shulkin is the Secretary of Veterans Affairs and is responsible for the "control, direction, and management" of the VA.  38 U.S.C. § 303.  Defendant Shulkin is sued in his official capacity as the Secretary of Veterans Affairs.

11.      Defendant United States of America is an appropriate defendant under the Administrative Procedure Act, 5 U.S.C. § 703, as this action seeks judicial review of final agency action.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and is brought pursuant to the APA, 5 U.S.C. §§ 701-706.  This Court has jurisdiction to review the VA's 2017 Class Deviation because it constitutes final agency action.

13.     Venue is proper in this District because the VA is headquartered in the District of Columbia and because a substantial part of the events giving rise to Alphapointe's claims occurred within this judicial district.  *See* 28 U.S.C. § 1391(e).

## FACTUAL BACKGROUND

### The Javits-Wagner-O'Day Act ("JWOD Act") and the AbilityOne Program

14.     Established by the JWOD Act (*see* 41 U.S.C. §§ 8501-8506), the AbilityOne Program addresses the severe employment and related economic disparities facing Americans who are blind or have significant disabilities, only about 38 percent of whom are employed.  To date, the AbilityOne Program has made a meaningful difference in the lives of blind and disabled Americans.  As noted in its most recently published annual report, "[f]ederal contracts for products and services created employment opportunities for more than 45,000 people who are blind or have significant disabilities, and accounted for $558 million in [annual] wages paid to employees working on AbilityOne contracts."  *See* AbilityOne Program FY 2014 Annual Report, http://www.abilityone.gov/media_room/documents/Commission_AnnualReport_Final_040815_ nocropmarks_508v2_FINAL.pdf

15.     The AbilityOne Program is overseen by the Committee for Purchase from People Who Are Blind or Severely Disabled, also known as the U.S. AbilityOne Commission ("Commission").  The Commission is an independent federal agency created to advance the policy of the United States "to increase employment and training opportunities for persons who are blind or have other severe disabilities through Government purchasing of commodities and services from nonprofit agencies employing these persons."  41 C.F.R. § 51-1.3.  It is comprised of fifteen members appointed by the President of the United States, eleven of whom are officers

or employees of the United States chosen from an enumerated list of departments and agencies of the United States Government, which includes the VA.  41 U.S.C. § 8502(b)(1)(H).

16.     The Commission has designated National Industries for the Blind ("NIB") and SourceAmerica as the Central Nonprofit Agencies ("CNAs") authorized to represent the interests of the blind and of persons with a range of disabilities, respectively, within the AbilityOne Program. NIB and SourceAmerica work closely with contracting activities and nonprofit agencies to match government requirements with AbilityOne nonprofit agency capabilities.

17.     In accordance with its statutory mandate to provide employment opportunities for people who are blind or have other severe disabilities through the award of federal government contracts, the Commission is responsible for establishing and maintaining a "Procurement List" that includes all products and services determined by the Commission to be suitable for purchase from a qualified AbilityOne nonprofit agency.  *See id.* § 8503(a).  The Commission has the exclusive authority to publish additions to and deletions from the Procurement List in the Federal Register, after a period of notice and comment.  *See id.* § 8503(a)(2).  In addition, the Commission is authorized to determine and revise the fair market price of the products and services contained on the Procurement List.  *Id.* § 8503(b).

18.     Once a product or service is on the Procurement List, government agencies are required to purchase the listed items only from a designated qualified nonprofit agency dedicated to providing employment opportunities and training to persons who are blind or severely disabled.  The JWOD Act provides:  "[a]n entity of the Federal Government intending to procure a product or service on the procurement list . . . ***shall*** procure the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with the regulations of the Committee and at the price the Committee

establishes if the product or service is available within the period required by the entity." *Id.* § 8504(a) (emphasis added); *see also* 48 C.F.R. § 8.002 ("Priorities for use of mandatory Government sources").

19.     Except as expressly stated, the mandatory sourcing requirement in the JWOD Act binds each "entity of the legislative or judicial branch, a military department or executive agency (as defined in sections 102 and 105 of title 5, respectively), the United States Postal Service, and a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces."  41 U.S.C. § 8501(4).  The JWOD Act expressly exempts from its application only "the procurement of a product that is available from an industry established under chapter 307 of title 18 [prison industries] and that is required under section 4124 of title 18 to be procured from that industry." *Id.* § 8504(b).

20.     The VA is an executive agency as defined in Section 105 of Title 5, 5 U.S.C. § 105, and is listed among the departments of the Executive Branch in Section 101 of Title 5.  5 U.S.C. § 101. At no time since its passage has Congress ever amended the JWOD Act to exempt the VA from its coverage.

**JWOD Act Implementing Regulations and Procurement List Updates**

21.     The JWOD Act permits the Commission to "prescribe regulations regarding specifications for products and services on the procurement list, the time of their delivery, and other matters as necessary to carry out this chapter."  41 U.S.C. § 8503(d)(1).  Consistent with this permissive authority, the Commission has prescribed specific regulations for designating items to be included on the Procurement List (*see* 41 C.F.R. Part 51), which address:

- The provision of appropriate public notice of proposed additions or deletions to the Procurement List.  *See* 41 CFR § 51-2.3.

- The Commission's assessment of particular criteria in determining the suitability of listing specific requirements on the Procurement List.  *See id.* § 51-2.4.

- The Commission's decision making process regarding final additions or deletions to the Procurement List and the provision of appropriate public notice concerning the same.  *See id.* § 51-2.5.

- The process for reconsideration of Commission decisions, which allows for receipt of additional information from interested persons seeking reconsideration. *See id.* § 51-2.6.

- The Commission's process of determining fair market pricing, which allows for further negotiation of pricing by the contracting agency and the nonprofit agency that will produce or provide the product or service.  *See id.* § 51-2.7.

22.     In making a determination that a particular product or service is suitable for addition to the Procurement List, certain criteria must be satisfied.  *See id.* § 51-2.4.  Among these criteria is a determination that the listing will not have a "severe adverse impact" on an incumbent contractor, giving particular attention to "the possible impact on the contractor's total sales" and "[w]hether that contractor has been a continuous supplier to the Government of the specific commodity or service proposed for addition and is, therefore, more dependent on the income from such sales to the Government."  *Id.* § 51-2.4(a)(4)(i)(A)-(B).  The regulations further provide that if there is no current incumbent, an impact analysis can be performed using the most recent contractor for the commodities or supplies at issue.  *See id.* § 51-2.4(a)(4)(ii).

23.     The JWOD Act requires the Commission to "prescribe regulations providing that when the Federal Government purchases products produced and offered for sale by qualified nonprofit agencies for the blind or qualified nonprofit agencies for other severely disabled,

priority shall be given to products produced and offered for sale by qualified nonprofit agencies for the blind." 41 U.S.C. § 8503(d)(2). The Commission has complied, issuing a regulation stating that "[i]n approving the addition of commodities to the Procurement List, the Committee accords priority to nonprofit agencies for the blind. Nonprofit agencies for the blind and nonprofit agencies employing persons with severe disabilities have equal priorities for services." 41 C.F.R. § 51-1.2(c).

24.     A "[q]ualified nonprofit agency for the blind" means: "an agency organized under the laws of the United States or of any State, operated in the interest of blind individuals, and the net income of which does not inure in whole or in part to the benefit of any shareholder or other individual; which complies with applicable occupational health and safety standards prescribed by the Secretary of Labor; and which in furnishing commodities and services (whether or not the commodities or services are procured under these regulations) during the fiscal year employs blind individuals for not less than 75 percent of the work-hours of direct labor required to furnish such commodities or services." *Id.* § 51-1.3. Alphapointe is among the qualified nonprofit agencies for the blind participating in the AbilityOne Program under the JWOD Act.

### JWOD Act Implementing Guidance - FAR Part 8

25.     The Federal Acquisition Regulation ("FAR") Subpart 8.7 provides implementing guidance for the JWOD Act. Specifically, FAR 8.704, Purchase Priorities, states: "The [JWOD Act] requires the Government to purchase supplies or services on the Procurement List, at prices established by the Committee, from AbilityOne participating nonprofit agencies if they are available within the period required."

26.     Elsewhere in FAR Part 8, the manner in which federal agencies must prioritize among the various statute-based mandatory source requirements enacted by Congress, including as set forth in the JWOD Act, is addressed as follows:

**FAR 8.002 Priorities for Use of Mandatory Government Sources.**

(a) Except as required by 8.003, or as otherwise provided by law, agencies shall satisfy requirements for supplies and services from or through the mandatory Government sources and publications listed below in descending order of priority:
    (1) *Supplies.*
        (i) Inventories of the requiring agency.
        (ii) Excess from other agencies (see subpart 8.1).
        (iii) Federal Prison Industries, Inc. (see subpart 8.6).
        (iv) Supplies that are on the Procurement List maintained by the Committee for Purchase From People Who Are Blind or Severely Disabled (see [s]ubpart 8.7).
        (v) Wholesale supply sources, such as stock programs of the General Services Administration (GSA) (see 41 CFR 101-26.3), the Defense Logistics Agency (see 41 CFR 101-26.6), the Department of Veterans Affairs (see 41 CFR 101-26.704), and military inventory control points.
    (2) *Services.*  Services that are on the Procurement List maintained by the Committee for Purchase From People Who Are Blind or Severely Disabled (see subpart 8.7).
(b) Sources other than those listed in paragraph (a) of this section may be used as prescribed in 41 CFR 101-26.301 and in an unusual and compelling urgency as prescribed in 6.302-2 and in 41 CFR 101-25.101-5.
(c) The statutory obligation for Government agencies to satisfy their requirements for supplies or services available from the Committee for Purchase From People Who Are Blind or Severely Disabled also applies when contractors purchase the supplies or services for Government use.

27.     Exceptions to the mandatory source prioritization in FAR 8.002 are the mandatory source requirements stated in FAR 8.003:

**FAR 8.003 Use of Other Mandatory Sources.**

Agencies shall satisfy requirements for the following supplies or services from or through specified sources, as applicable:

(a) Public utility services (see part 41).
(b) Printing and related supplies (see subpart 8.8).
(c) Leased motor vehicles (see subpart 8.11).

(d) Strategic and critical materials (e.g., metals and ores) from inventories exceeding Defense National Stockpile requirements (detailed information is available from the DLA Strategic Materials, 8725 John J. Kingman Rd., Suite 3229, Fort Belvoir, VA 22060-6223.

(e) Helium (see subpart 8.5 -- Acquisition of Helium).

### The Veterans Benefits Act ("VBA")

28.     On December 22, 2006, Congress passed the Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. Law No. 109-461, 120 Stat. 3403 (2006) (the "Veterans Benefits Act" or "VBA").  The VBA was enacted in part "to increase contracting opportunities for small business concerns owned and controlled by veterans and small business concerns owned and controlled by veterans with service-connected disabilities . . . ." 38 U.S.C. § 8127(a).  Among other things, the VBA established the VFCP, which imposes on the VA in competitive solicitations an obligation to procure requirements from a veteran-owned small business concern if, using a required "Rule of Two" analysis, the VA first determines that there are at least two qualified veteran-owned small businesses available for contracting:   "a contracting office of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States."  38 U.S.C. § 8127(d).

29.     On August 20, 2008, the VA issued a notice for comments on a proposed rule to implement portions of the VBA.  *See* 73 Fed. Reg. 49,141 (Aug. 20, 2008).  In response to the proposed rule, the VA received 97 comments.  *See* 74 Fed. Reg. 64,619 (Dec. 8, 2009).

30.     On December 8, 2009, the VA issued a final rule implementing the VFCP, effective January 7, 2010.  *Id.* The final rule did not amend Veterans Affairs Acquisition

Regulation ("VAAR") 808.002, "Priorities for use of Government supply sources."  As such, the

AbilityOne procurement priorities in the FAR continued to control.  *See id.* at 64,622-23.  The

VA confirmed as much in the preamble to the final rule, explaining that "[t]his rule will not

negatively impact AbilityOne and its ability to continue to provide employment to disabled

veterans.  This rulemaking does not alter AbilityOne's status in the ordering preference for

current or future items on the AbilityOne procurement list."  *Id.* at 64,622.  The VA went on to

say that "AbilityOne's priority status has not been changed as a result of this rule.  Further, this

rule does not impact items currently on the AbilityOne procurement list or items that may be

added to the procurement list in the future."  *Id.*

31.     On April 28, 2010, the VA issued an internal information letter providing

guidance to VA contracting activities concerning the VFCP and the AbilityOne Program.  *See*

New Guidelines for Placing Items and Services on the AbilityOne Procurement List, IL 001AL-

10-06, Office of Acquisition and Logistics Information Letter (Apr. 28, 2010) ("2010

Information Letter").  The Information Letter stated:

> The Veterans First Contracting Program final rule does not affect
> AbilityOne's order of priority in relation to the Veterans First
> Contracting Program.   Therefore, all items currently on the
> AbilityOne Procurement List as of January 7, 2010, will continue
> to take priority over the contracting preferences mandated by P.L.
> 109-461.   However, all new requirements will be subject to the
> contracting preferences mandated by P. L. 107, 461 prior to being
> considered for placement with the AbilityOne Program.   This
> policy provides an equitable solution by ensuring VA's continued
> commitment to AbilityOne, while also recognizing the changes to
> VA's small business hierarchy.

*Id.* at 2.  Thus, while the 2010 Information Letter purported to change the way that the VA would

handle the proactive placement of requirements on the AbilityOne Procurement List, it made

clear that the VA would continue to give preference to items on the Procurement List, even if the

Commission added them after January 7, 2010, consistent with the mandatory source

requirements in the JWOD Act and the mandatory source priorities in FAR Part 8.

## The *Kingdomware* Ruling and Subsequent VA Guidance

32.     The Supreme Court decided *Kingdomware* on June 16, 2016.  The specific issue before the Court was whether the VA was required to perform a Rule of Two analysis before procuring products from the General Services Administration's Federal Supply Schedule, which is not a mandatory Government source of supplies and services.  136 S. Ct. at 1974-75.  The VA argued that a Rule of Two analysis was not required once the VA had met its annual veteran-owned small business subcontracting goals, but the Court rejected this position.  *Id.* at 1972. *Kingdomware* does not involve or mention the AbilityOne Program, which is a mandatory Government source of supplies and services.  *See id.*

33.     On July 25, 2016, the VA issued VA Procurement Policy Memorandum (2016-05) - Implementation of the Veterans First Contracting Program as a Result of the U.S. Supreme Court Decision ("Policy Mem.").  Among other things, the Policy Memorandum included steps for conducting market research to ensure compliance with the Rule of Two in particular circumstances.

34.     Consistent with the VA's 2010 final rule and longstanding policy interpretation concerning the priority to be accorded to AbilityOne products and services, the Policy Memorandum specifically addressed the AbilityOne Program as follows:

> VA has a continuing requirement to comply with all statutory mandates.  When a contracting officer is required by law to obtain goods and services from a specific source, the contracting officer shall carry out that mandate.  These include supplies and services listed on the Procurement List issued by the Committee for Purchase from People Who Are Blind or Severely Disabled. Follow the procedures at FAR 8.705 for procuring listed items from the designated central non-profit agencies or the affiliated AbilityOne non-profits.   To add new requirements to the Procurement List contracting officers shall comply with the

> requirements of Information Letter 001AL-10-06, "New Guidelines for Placing Items and Services on the AbilityOne Procurement List."

Policy Mem. at 11.

35.     The Policy Memorandum also contained a Class Deviation from the VAAR to "amend the implementation of the Veterans First Contracting Program consistent with the decision of the United States Supreme Court."   Class Deviation -- Implementation of the Veterans First Contracting Program as a Result of the U.S. Supreme Court Decision (Class Deviation -- Veterans First Contracting Program (VFCP 2016) July 25, 2016) (Policy Memorandum, Attach. 1) ("Class Deviation Memorandum").  A class deviation is "[t]he issuance or use of a policy, procedure, solicitation provision, contract clause, method, or practice of conducting acquisition actions of any kind at any stage of the acquisition process that is inconsistent with the FAR."  48 C.F.R. § 1.401 citation omitted); *see also* 48 C.F.R. § 801.404.

36.     Consistent with the VA's 2010 final rule and longstanding policy interpretation concerning the priority to be accorded to AbilityOne products and services, the VA's 2016 Class Deviation from VAAR 808.002 gave mandatory priority to the AbilityOne Program:

> (iv) Supplies or services that are on the Procurement List maintained by the Committee for Purchase from People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7), are mandatory sources.  However, VA contracting officers shall, prior to adding any new VA requirements to the Procurement List, conduct market research, apply the VA Rule of Two to consider Vendor Information Pages (VIP) verified service-disabled veteran-owned small businesses (SDVOSBs) and veteran-owned small businesses (VOSBs) as required in 38 U.S.C. 8127 and implemented in subpart 819.70.  All new VA requirements must be approved by the Chief Acquisition Officer, via the Senior Procurement Executive, before contacting the Committee for adding to the Procurement List.

2016 Class Deviation Memorandum at Attach. 4.

37.     Also consistent with the VA's 2010 final rule and longstanding policy interpretation concerning the priority to be accorded to AbilityOne products and services, the Policy Memorandum contained a Decision Tree chart requiring contracting officers to first consider whether "Mandatory Sources" such as the AbilityOne Procurement List are available and, if so, to proceed without conducting a Rule of Two analysis.  (Policy Memorandum, Attach. 2).

### 2017 VA Class Deviation

38.     On March 1, 2017, the VA amended the July 2016 VAAR Class Deviation from VAAR 808.002.  Class Deviation (Revised) -- Implementation of the Veterans First Contracting Program (VFCP) as a result of the U.S. Supreme Court Decision (Class Deviation -- VFCP FEB 2017) (VAIQ #7773453) ("2017 VA Class Deviation").  The VA issued this amendment only after an SDVOSB filed a bid protest lawsuit in the U.S. Court of Federal Claims, challenging the July 2016 VAAR Class Deviation.

39.     The 2017 VA Class Deviation states:

> Supplies on the Procurement List maintained by the Committee for Purchase from People Who Are Blind or Severely Disabled, known as AbilityOne (FAR subpart 8.7).
>
> (A) Supplies [and Services] on the Procurement List are mandatory only if:
>
>     (1) The supplies [or services] were added to the Procurement List prior to January 7, 2010, and the date the supplies were added is readily available; or
>
>     (2) The supplies [or services] were added to the Procurement List on or after January 7, 2010, the VA Rule of Two (see VAAR Class Deviation 802.101 definition) was applied prior to the addition of the supplies to the Procurement List, and that information is readily available.
>
> (B) The VA Rule of Two must be applied prior to VA requesting addition of new supplies [or services] to the Procurement List.  On

or after January 7, 2010, if supplies were added to the Procurement List at the request of an agency other than the VA, the VA Rule of Two will be applied prior to VA purchasing the supplies from the Procurement List.

(C) When the VA Rule of Two is not satisfied and award to eligible SDVOSBs/VOSBs (pursuant to VAAR subpart 819.70) will not occur, the priority use of AbilityOne in accordance with FAR 8.002 applies.

2017 VA Class Deviation at Attach 4.

40.     The 2017 VA Class Deviation was a significant departure from both the 2016 Class Deviation and the 2010 final rule, as well as the VA's long established and consistent past practice concerning mandatory government sources.  For the first time in the long history of the AbilityOne Program, the VA now asserts that contracting officers may purchase goods and services from the Procurement List without conducting a Rule of Two analysis only if the contracting officer can readily determine that the goods and services were added before the 2010 rule implementing the VBA, while mandating that they conduct a Rule of Two analysis for all items added to the Procurement List after the 2010 rule or if information regarding when an item was added to the Procurement List is not readily available.

41.     The VA did not issue any notice or solicit comment before adopting the 2017 VA Class Deviation.

### <u>Significant Impact on Alphapointe and Others</u>

42.     VA procurements account for more than 15 percent of AbilityOne sales by qualified nonprofit agencies for the blind.  Those sales provide jobs for approximately 800 blind or visually impaired individuals, including many veterans and wounded warriors, whose continued employment will be jeopardized by the 2017 VA Class Deviation.

43.     The VA has long been, and remains, one of Alphapointe's most important customers.  VA procurements account for approximately 10 percent of Alphapointe's annual

revenue attributable to its plastics business line (which includes, e.g., prescription and other types of plastic bottles) and 10 percent of Alphapointe's annual revenue attributable to its janitorial products business line (which includes, e.g., mops, brooms, and other janitorial products).  In the case of the plastics business line, Alphapointe has been supplying some of these products, such as prescription bottles for the VA's national mail order pharmacy program, continually since 1995.

44.     Given how the AbilityOne Program works and the VA's longstanding policy and practice, including since passage of the VBA, Alphapointe reasonably expected to continue to serve the VA's needs for plastic bottles and janitorial products.  This is no longer the case as a result of the VA's changed position as set forth in the 2017 VA Class Deviation and subsequent communications, which already has had a direct and negative impact on Alphapointe.

45.     On June 19, 2017, Alphapointe received an email from a VA Contracting Specialist with information regarding (among other things) the 0012 Contract.  In this email, the VA Contracting Specialist advised of the VA's new position as follows:  "Rule of Two (Preference for Service Disabled Veteran Owned and Veteran Owned Small Business) takes precedence over Ability One/Source America as mandatory sources for supplies and services, [and] we are going to have to recompete this requirement as a non-Ability One set aside unless our market research efforts (yet to be conducted) validate otherwise."  Email from VA to Alphapointe (June 19, 2017).  The email specifically notes that this action applies to the VA's prescription bottle contract with Alphapointe, which expires on November 12, 2017.  It also mentions the possibility of putting in place a potential bridge IDIQ contract to "fill in the gaps between expiration of current contract and a new contract," though these details are still under review.  *Id.*

46.     The position communicated by the VA in its June 19, 2017 email actually goes beyond the position articulated in the 2017 VA Class Deviation, which purported to exempt from its purview items added to the Procurement List before 2010.   The prescription bottles that Alphapointe supplies to the VA were added to the Procurement List in 1995.

47.     Thus, whereas Alphapointe has partnered with the VA to meet its prescription bottle needs since 1995, the VA has now advised that if it identifies at least two SDVOSBs and/or VOSBs who can supply prescription bottles, the VA will no longer partner with Alphapointe for its prescription bottle needs.   It is anticipated that the VA will reverse course in a similar fashion with respect to ordering janitorial products from Alphapointe under existing contract vehicles as well.

48.     The VA's position change as set forth in the 2017 VA Class Deviation and expanded upon in the June 19, 2017 email will result in losses of nearly $5 million each relating to the plastics and janitorial business lines, for a combined total of approximately $10 million in annual revenue losses, or twenty percent of Alphapointe's annual revenue.   These revenues support direct employment of blind individuals as well as training, education, rehabilitation, and outreach programs for employees and other members of the blind community.   The losses of these revenues, due to the VA's action, will have a devastating impact on Alphapointe, its employees, and the blind community it serves.

49.     The unemployment rate for people who are blind, which is around 62 percent,  far exceeds that of the general population.   Alphapointe currently employs approximately 400 people, 229 of whom are blind or visually impaired.   The portion of its workforce dedicated to working on VA-related business presently includes 15 veterans, 4 of whom are blind or visually impaired.   Alphapointe also plans to hire an additional 5-10 blind or visually impaired persons to

meet current and anticipated contractual commitments associated with the VA business.  The VA's action will jeopardize Alphapointe's ability to continue employing many of the blind or visually impaired persons currently on its payroll and to hire additional blind or visually impaired persons as planned.  All of these blind or visually impaired persons will experience great difficulty finding replacement jobs due to the nature of their severe impairment.

50.     The VA's position change as set forth in the 2017 VA Class Deviation and expanded upon in the June 19, 2017 email will have a severe impact beyond a loss of employment for current and prospective Alphapointe employees.  A substantial portion of Alphapointe's annual revenues are dedicated to providing support and training services for the blind community, including vocational training, education, rehabilitation, and outreach.  These services reach nearly 2,000 members of the blind community annually, including nearly 300 children.  In fact, Alphapointe is the sole comprehensive providers of these services in Missouri.  Without the VA business, Alphapointe would have to scale back significantly or eliminate these programs, resulting in significant negative impact those who benefit from them.

51.     The VA's action likely will have a direct and substantial impact on another aspect of Alphapointe's operations.  Specifically, the loss of Alphapointe's approximately $5 million in annual VA business relating to plastic bottles could cause Alphapointe to fail its debt covenants for a loan recently secured to purchase property in Queens, NY.  This would have a significant impact on Alphapointe, its employees, and the blind community at large, as Alphapointe is New York City's largest employer of individuals who are blind and visually impaired and the only industrial employer of this population in the City's five boroughs.

**COUNT I**
**(Declaratory Judgment that the VA's Action**
**Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

52.     Paragraphs 1-51 are incorporated by reference herein.

53.     Under the APA, a court must hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law."  5 U.S.C. § 706(2).

54.     The VA's elevation of a contracting preference for VOSBs and SDVOSBs over a priority for AbilityOne NPAs through the 2017 VA Class Deviation and the VA's June 19, 2017 email violates the APA because it ignores the mandatory sourcing requirements set forth in the JWOD Act and FAR Part 8 as they apply to the VA.  The JWOD Act specifically requires federal agencies to procure items on the AbilityOne Procurement list from a qualified nonprofit agency for the blind or other seriously disabled.  41 U.S.C. § 8504.  FAR Part 8 reiterates this obligation, stating that federal agencies must prioritize procurement from qualified  NPA for the blind or other severely disabled under the AbilityOne Program before resorting to other sources, other than as expressly provided for in that subpart.

55.     The VA's elevation of a contracting preference for VOSBs and SDVOSBs over a priority for AbilityOne NPAs through the 2017 VA Class Deviation and the VA's June 19, 2017 email also violates the APA because the VA departed from its 2010 final rule, as well as its long-established and consistent past practice of prioritizing the AbilityOne mandatory sourcing requirements under the JWOD Act, without providing a reasoned explanation for the change. Congressional intent concerning prioritization of products and services available on the

AbilityOne Procurement List has been clear since passage of the JWOD Act and has remained clear since passage of the VBA in 2006.  The VA acted in a manner consistent with this intent in issuing its 2010 final rule, 2010 Information Letter, 2016 Policy Memorandum, and 2016 Class Deviation from VAAR 808.002, all of which gave mandatory priority to the AbilityOne Program, before abruptly and without a reasoned explanation reversing course in issuing the 2017 VA Class Deviation.

56.     Further, the VA violated the APA by adopting the 2017 VA Class Deviation and then expanding upon it in the June 19, 2017 email without adhering to the notice-and-comment requirements set forth in the APA.  Despite that the 2017 VA Class Deviation imposes new obligations and represents a significant departure from long-established and consistent past practice by the VA as respects the prioritization of products and services available on the AbilityOne Procurement List, the VA provided no advance notice to the public, nor did the public have an opportunity to comment on the new rule.

57.     The VA's action is otherwise arbitrary, capricious, and contrary to law, in violation of the APA.

### COUNT II
### (Request for Preliminary and Permanent Injunctions Prohibiting the VA's Unlawful Action)

58.     Paragraphs 1-57 are incorporated by reference herein.

59.     By issuing and following and/or expanding upon the 2017 VA Class Deviation, the VA has effectively eliminated the mandatory priority accorded to the AbilityOne Program by Congress under the JWOD Act.  This is because, in reliance on the 2017 VA Class Deviation, the VA may no longer continue to give preference to items on the Procurement List without first conducting a Rule of Two analysis.  If the Rule of Two analysis identifies two VOSBs or

SDVOSBs capable of performing the contract, the VA will not purchase the items on the Procurement List from the qualified nonprofit agency.

60.     By failing to follow the law, the VA has improperly denied Alphapointe and other qualified nonprofit agencies the rights and opportunities to which they are entitled under the JWOD Act and the AbilityOne Program.

61.     The pertinent statutory and regulatory authorities at issue here are reconcilable and make clear that federal agencies, including the VA, are required to prioritize procurement from qualified nonprofit agencies under the JWOD Act.  The VA's conduct is at odds with these authorities, and Alphapointe thus will succeed on the merits of this matter.

62.     If the VA is not enjoined from ignoring its statutory obligation to prioritize products and services on the AbilityOne Procurement List, Alphapointe, as well as the blind and visually impaired employees and members of the blindness community it serves, will suffer particularized  irreparable harm.

63.     The balance of hardships favors immediate entry of an injunction.  The VA will not be harmed by being required to follow the law.  Further, the AbilityOne Program contains built in protections to address potential harm to VOSBs and/or SDVOSBs resulting from proposed additions to the Procurement List, and the slight potential harm that may result to VOSBs and/or SDVOSBs who wish to compete for VA business relating to products and services that are currently on the AbilityOne Procurement List is insufficient to favor immediate enforcement, particularly when maintaining the status quo means requiring the VA to abide by a law designed to provide employment opportunities for people who are blind or have other severe disabilities in the manufacture and delivery of products and services to the Federal Government.

64.     The public interest will be served by granting the injunction because the public's interest lies in ensuring the statutory requirements of the JWOD Act are followed and that qualified AbilityOne nonprofit agencies are given the priority that Congress originally intended. The VA's unlawful actions have the adverse effect of undermining the integrity of the federal procurement process.

## REQUEST FOR RELIEF

WHEREFORE, Alphapointe respectfully requests that this Court enter judgment in favor of Alphapointe and against Defendants and award Alphapointe the following relief:

1.     A declaration that the 2017 VA Class Deviation violates the APA;

2.     A preliminary injunction prohibiting the VA from enforcing the 2017 VA Class Deviation and directing the VA to continue to give preference to items on the Procurement List without first conducting a Rule of Two analysis, consistent with existing VA rules and longstanding policy;

3.     A permanent injunction prohibiting the VA from enforcing the 2017 VA Class Deviation and directing the VA to continue to give preference to items on the Procurement List without first conducting a Rule of Two analysis, consistent with existing VA rules and longstanding policy;

4.     An award of Alphapointe's costs in this action, including reasonable attorneys' fees; and

5.     An award of any further relief that the Court deems just and proper.

Dated: July 28, 2017                    DENTONS US LLP


                                        By: /s/ Joanne L. Zimolzak
                                        _____
                                            Joanne L. Zimolzak, Bar No. 452035
                                            joanne.zimolzak@dentons.com
                                            1900 K Street, NW
                                            Washington, District of Columbia  20006
                                            Telephone No.:  (202) 496-7500
                                            Facsimile No.:  (202) 496-7756

                                            Attorney for Plaintiff Alphapointe


Of Counsel:

Jessica C. Abrahams, D.C. Bar No. 435361
jessica.abrahams@dentons.com
Dentons US LLP
1900 K Street, NW
Washington, District of Columbia  20006
Telephone No.:  (202) 496-7500